**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LOGAN CHRISTOPHER MURFIN,**<br>**a/k/a "Azulenq,"**<br><br>**Defendant.** | **Case No. 25-CR-463-GKF** |

**Government's Trial Brief**

The United States of America respectfully submits its brief for trial in this case.

**Status of the Case**

1. Jury trial is set for April 20, 2026, before the Honorable Jennifer Choe-Groves, by referral from the Honorable Gregory K. Frizzell.

2. Estimated time for trial, including jury selection, is two to three days.

3. Defendant Logan Murfin is not in custody.

4. Trial by jury has not been waived.

5. No interpreter is needed.

6. Murfin has not provided notice of any affirmative defense.

7. Murfin has provided no reciprocal discovery.

8. The parties have entered into one stipulation: that Murfin's posts on X/Twitter were communications that were transmitted in interstate or foreign commerce. *See* Dkt. 34.

9. The government will provide a final witness list, final exhibit list, and exhibit

binder to the Court and defense counsel by April 16, 2026, consistent with the Court's scheduling order.

## Factual Statement

X, formerly known as Twitter, is a social media platform where users can make written, publicly accessible posts. Users can also respond to others' posts. Defendant Logan Murfin was a user of X. Rather than post using his real name, Murfin posted under the username "Azulenq."

Posting as "Azulenq," Murfin made numerous posts on X threatening the shooting, murder, and execution of federal agents, specifically United States Immigration and Customs Enforcement ("ICE") agents. Murfin made the ten threats charged in the Superseding Indictment on various days between July and October 2025. Murfin made the charged posts in response to other users posting about the activities of ICE agents in the community, including ICE agents making arrests and enforcing federal law. The ten charged threats[1] in the Superseding Indictment (Dkt. 31) are:

- "Need too start shooting these 'just following orders' pigs. Ice agents are reenacting ww2 nazi germany and its not acceptable. Only good ice terrorist is buried 6 feet under." (Counts 1-2)

[1] The Superseding Indictment contains twenty counts, based on ten specific threats. Each threat forms the basis of two charges: a violation of 18 U.S.C. § 115(a)(1)(B) and a violation of 18 U.S.C. § 875(c). Thus, Counts One and Two are based on the same threat; Counts Three and Four are based on the same threat; etc. The § 115(a)(1)(B) charges are the odd-numbered counts; the § 875(c) charges are the even-numbered counts.

- "Every ICE agent needs shot between the eyes 'just following orders' isnt acceptable and they already exposed they are human garbage." (Counts 3-4)

- "Every Ice gestapo needs too be shot. 2nd amendment right too carry everyone should stay armed and when these terrorists come by just kill them. They dont deserve too live after 'just following orders' we aren't reliving ww2 germany. They dont want due process so show em." (Counts 5-6)

- "but we as US citizens should be gunning down these domestic terrorists. All ice gestapo can not use the 'just following orders' excuse. If you're complicit in this act you've gotta be executed for this act." (Counts 7-8)

- "Yeah ICE agents need to get shot in a 3,959 mile radius no where safe for gestapo pigs." (Counts 9-10)

- "Think all ICE gestapo need too be executed. Following orders isn't gonna fly as an excuse were not going to remake 1940's germany." (Counts 11-12)

- "Every ice gestapo needs too be executed." (Counts 13-14)

- "ice gestapo agents need to either be executed publicy. "just following orders" is not a valid excuse in modern days." (Counts 15-16)

- "These gestapo agents need to be executed following orders isnt an excuse in modern days." (Counts 17-18)

- "Anyone in ICE should be executed no bargaining with terrorists." (Counts 19-20)

Law enforcement learned of the threats in October 2025. Pursuant to a federal search warrant, X provided the account's metadata, which included the metadata of the charged posts. The X account was also linked to a specific IP address, which traced to Murfin's home address and name. The profile page of the Azulenq account listed a date of birth, which matched Murfin's.

A federal grand jury returned the original indictment on December 2, 2025. Dkt.

2. After Murfin's arrest, Murfin was *Mirandized* and agreed to be interviewed. During the interview, Murfin stated he had never been arrested before, did not own a firearm, and did not have a "manifesto" or "ISIS flag" at his house. Murfin admitted that the Azulenq X account was his and that he was the only person who posted on the account. He also admitted to making the specific posts charged in the original indictment (Counts One through Ten). He further admitted to making the posts because he was "mad" and "pissed off" at ICE agents.

Murfin moved to dismiss the indictment on the grounds that his posts were protected by the First Amendment. Dkt. 20. The government opposed the motion, explaining that the Supreme Court and Tenth Circuit have established that "true threats" are not protected by the First Amendment; and it is up to the jury to decide whether a statement is a threat. Dkt. 24. The Court denied Murfin's motion to dismiss because "a reasonable jury could find that Mr. Murfin's statements constituted true threats." Dkt. 28 at 7 (opinion and order denying motion to dismiss).

The grand jury returned the superseding indictment on April 6, 2026. Dkt. 31; *see supra* n.1.

## Legal and Evidentiary Issues

### *1. Pre-admission of Exhibits*

The government will confer with defense counsel ahead of trial regarding the pre-admission of exhibits.

***2. Rule of Sequestration and Case Agent Designation***

The government requests the Court instruct the witnesses for both the government and the defendant to comply with Rule 615 of the Federal Rules of Evidence. The government requests that HSI Special Agent Rebecca Gionta be allowed to sit at counsel table as the case agent under Rule 615(a)(2).

***3. Murfin's Out-of-Court Statements***

The government will elicit multiple statements and admissions made by Murfin related to the charges in this case. These include the posts that form the basis of the charges and statements Murfin made during his *Mirandized* interview. The government intends to elicit testimony about Murfin's out-of-court statements from at least one witness. These are statements made by a party-opponent and not hearsay. Fed. R. Evid. 801(d)(2)(A) (statement that "is offered against an opposing party" and "was made by the party in an individual or representative capacity" is not hearsay even if that statement is offered for its truth).

Rule 801(d)(2)(A) allows the government to offer Murfin's out-of-court statements for the truth of the matter, but it does not allow Murfin to offer his own out-of-court statements. An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay. *Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false"). Accordingly, any attempt by Murfin to elicit testimony concerning any self-serving hearsay is not admissible.

### 4. *Evidence and arguments related to Murfin's intent or ability to actually carry out the charged threats are not admissible under Rules 402 and 403.*

The Court should probit Murfin from eliciting evidence or arguing to the jury that Murfin (1) did not intend to carry out the threats in his posts, and (2) did not have the ability to carry out the threats in his posts.[2] Such evidence would be irrelevant under Federal Rule of Evidence 402; the danger of unfair prejudice, confusing the issues, and misleading the jury from such evidence would substantially outweigh its probative value under Federal Rule of Evidence 403; and offering such evidence would amount to an improper invitation for jury nullification.

In threat prosecutions, the defendant "need not actually intend to carry out the threat." *Virginia v. Black*, 538 U.S. 343, 360 (2003). In denying Murfin's motion to dismiss, the Court recognized that "[i]t is *the making of the threat* and not the intention to carry out the threat that violates the law." Dkt. 28 at 4 (quoting *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015)) (emphasis added). For that reason, "[i]t is not necessary to show that Mr. Murfin intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat." *Id.*; *see also* Tenth Circuit Pattern Instruction No. 2.37.1 (2026) (same).

[2] Sections 4, 5, 6, and 7 of this trial brief address the same evidentiary issues raised in the government's omnibus motion in limine. Dkt. 29. The Court struck that filing due to it being filed after the motions deadline, but stated that the government "may of course brief the stricken evidentiary issues in its trial brief[.]" Dkt. 41. The government thus renews its objections and arguments raised in the omnibus motion in limine, and incorporates its arguments here. *See* Dkt. 29.

Nevertheless, Murfin may try to present evidence that he lacked the intent or ability to carry out his threats. For example, he may try to elicit that he did not own firearms; did not have followers; did not draft a "manifesto"; did not have prior criminal convictions; did not personally engage with ICE agents or other law enforcement; or any number of other similar evidence of his intent or ability to carry out the threats. The Court should prohibit any such evidence, and should do so before the jury is empaneled as to not interrupt the trial.

### ***A. Evidence of Murfin's intent or ability to carry out the threats is irrelevant under Rule 402.***

It does not matter whether Murfin had firearms to shoot ICE agents or followers to shoot them on his behalf. *See, e.g.*, *United States v. Wheeler*, 776 F.3d 736, 746 (10th Cir. 2015) (rejecting argument that communications were not threats since they were directed to non-existent "religious followers" because "the appropriate inquiry is not whether Mr. Wheeler in fact had religious followers, or whether he believed he had religious followers, but whether a reasonable recipient of the threat could have so thought"). Nor does it matter whether Murfin had an actual plan to murder ICE agents, whether he was previously law abiding, or whether he knew where to find ICE agents. Indeed, no one reading "Azulenq's" threats would have known any of this when he *anonymously* posted his threats, so none of this information could have informed a reasonable person's interpretation of Murfin's posts. *See* Dkt. 28 at 4 ("The question is whether those who hear or read the threat reasonably consider that an actual threat has been made." (internal quotation omitted)).

What matters "is the making of the threat[,] not the intention [or ability] to carry out the threat[.]" *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015). And whether it's a threat "depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). Because it "is the making of the threat" alone "that violates the law" (Dkt. 28 at 4), any evidence or arguments that Murfin lacked the intent or ability to carry out the threats is irrelevant and inadmissible under Rule 402.

Similarly, Murfin's intent or ability to carry out the threats is not relevant to the mens rea element of the charged offenses; that is, whether he made the threats "with intent to impede, intimidate, [] interfere[, or] retaliate" against a federal law enforcement officer. *See* 18 U.S.C. § 115(a)(1)(B).[3] The requisite mens rea is tied solely to the act of communicating the threat (*i.e.*, the criminal act). There is no requirement that a defendant work towards carrying out the threat or endeavor to retaliate against the federal agent beyond making the threat—the crime is complete once the threat has been communicated, as "[i]t is the making of the threat and not the intention to carry out the threat that violates the law." *Dillard*, 795 F.3d at 1199.

### *B. Evidence of intent or ability to carry out the threats is also inadmissible under Rule 403.*

In addition to being irrelevant, evidence and arguments about Murfin's intent or ability to carry out the threats are inadmissible under Rule 403. Their probative value

[3] As discussed in Section 8 below, the mens rea requirement for the § 875(c) charges is simply recklessness.

is minimal, for the reasons already discussed. And whatever probative value they have is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Hearing that Murfin lacked the intent or ability to actually murder ICE agents or that he lacked the loyal followers necessary to make someone else murder ICE agents may overshadow the threats themselves in the jury's mind. The jury may ascribe outsized—and inappropriate—significance to the fact that no physical violence was purportedly visited upon an ICE agent as a result of Murfin's posts, which in actuality is not relevant to the issues the jury must decide. Even worse, such evidence and arguments would likely invite jury nullification. *E.g.*, *United States v. Lin*, No. CR-23-192-G, 2024 WL 5048806, at *4 (W.D. Okla. Dec. 9, 2024) (internal quotation omitted) (prohibiting the defendant from introducing evidence or argument that would "encourage jury nullification").

Murfin contends that evidence and argument related to his intent or ability to carry out the threats is relevant because the search warrant for Murfin's residence included a search for weapons. Dkt. 39 at 3. Not so. That Murfin's threats gave officers probable cause to search for weapons does not make the absence of weapons at Murfin's house relevant in his trial for making threats. The legal elements and binding precedent, not a search warrant application, dictate the admissibility of evidence at trial.

For these reasons, the Court should prohibit Murfin from introducing or eliciting any evidence or argument relating to whether he intended to carry out the threats against ICE agents or had the ability to carry out the threats.

### 5. *Evidence and arguments related to the post on ICE's social media pages that announced Murfin's arrest are not admissible under Rules 402 and 403.*

The Court should prohibit Murfin from referencing or introducing the post on ICE's social media pages that announced Murfin's arrest in December 2025.[4] Murfin included the post in his motion to dismiss, which consisted of a photo of Murfin and announced his charges and arrest. *See* Dkt. 20, Attachment B (reproduced below).




[4] To the extent Murfin wishes to determine whether any potential jurors saw this post during voir dire, the Court's standard voir dire questions about whether any potential juror is familiar with the defendant or this case will address that concern. There is no need to inquire about this specific post during voir dire. Moreover, allowing Murfin to inquire about this specific post during voir dire would have the tendency to inflame the passions of the members of the jury pool about a matter that will not be admissible at trial.

Murfin argued in his motion to dismiss that this post suggested that "[e]ven ICE itself did not believe the statements reflected threats." *Id.* at 21. The Court should preclude any reference to, or argument about, this post under Rules 402 and 403.

First, the post is irrelevant. What someone on ICE's social media team posted in December 2025—*after* "Azulenq" had been identified as Murfin and *after* Murfin had been safely detained—is irrelevant to how a reasonable person would have viewed Azulenq's posts when he anonymously made them months earlier. *See* Tenth Circuit Pattern Instruction No. 2.37.1 (noting that a "threat" is determined under a "reasonable person" standard); Dkt. 28 at 4 (same). What the manager of ICE's social media pages thought of Murfin's posts months later, following Murfin's identification and arrest, is irrelevant to this case. On top of that, there is no basis to attribute the post to the federal agents in the field—the targets of Murfin's threats—so the post has no bearing on the perspective of the targets of Murfin's threats. And the one-sentence summary of Murfin's threats included in the ICE social media post is likewise irrelevant as the jury will be tasked with assessing the actual, full statements made by Murfin. The post is thus irrelevant to the jury's determination in this case.

Second, any probative value of an ICE social media post is substantially outweighed by the risk of unfair prejudice. Because the post was made months after Murfin made his threats and is thus irrelevant to how his threats would have been viewed at the time he made them, the only reason Murfin would seek to introduce this post would be to invoke an emotional response from the jury. But any such

attempts to inflame the emotions of the jury—not on the merits of the case and the application of the facts to the law, but on the jurors' opinions about the propriety of the post—has a significant risk of unfair prejudice. *See* Fed. R. Evid. 403, Advisory Committee Notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). Likewise, Murfin's reference to and arguments about the post would simply delay the trial and waste time as it does not go to the merits of the case for the reasons discussed. It is thus inadmissible under Rule 403.

While Murfin asserted in his motion to dismiss that this ICE post suggested that "ICE itself did not believe the statements reflected threats" (Dkt. 20 at 21), he instead asserts in his most recent filing that this post "reflected bias on the part of the United States and the investigating agency," which "calls into question the credibility of any investigation that was performed." Dkt. 39 at 4. Addressing this new argument, Murfin fails to show how a post made after an investigation was complete, posted by an unknown person at a large agency, calls into question the investigation's "credibility." He also fails to explain which witness's "credibility" or "bias" he seeks to attack with the post, nor does he explain how he will link that witness's credibility or bias to a post that someone else made. Ultimately, the Court should treat the post as the irrelevant sideshow it is, and exclude the post under Rules 402 and 403.

***6. Other than law enforcement's direct response to Murfin's threats, evidence and arguments related to Murfin's or others' conduct or statements that occurred after Murfin made the last threat with which he's charged is not admissible under Rules 402 and 403.***

Any conduct or event occurring after October 2025—such as Murfin's post-threat regrets as well as ICE-involved shootings, protests, statements by politicians or other individuals, and other events occurring in 2026—are irrelevant and violate Rule 403, and are thus inadmissible.

Whether Murfin made true threats with the requisite intent is determined at the time he made the charged posts. *See Dillard*, 795 F.3d at 1199 ("It is the making of the threat … that violates the law."). Whether a statement is a threat turns on an "objective test" that asks "whether those who hear or read the threat reasonably consider that an actual threat has been made." *Id.* This objective analysis "requires a fact-intensive inquiry, in which the language [of the statements], the context in which the statements are made, as well as the recipients' responses are all relevant." *Id.* Inherently, anything occurring after the posts were made cannot inform "the context in which the statements are made." The only post-October-2025 conduct that could be relevant is the response of law enforcement—the targets—to Murfin's threats. *See Dillard*, 795 F.3d at 1199 (noting the "recipients' responses" are relevant).

Murfin's own conduct after October 2025 is irrelevant to whether he had the requisite mens rea when he made the posts and also irrelevant to whether a reasonable person would construe his posts as threats *at the time he anonymously made them*. For example, his conduct in February 2026 is irrelevant to whether he acted

recklessly (the mens rea for the Section 875(c) charges) or with the intent to impede, intimidate, interfere, or retaliate (Section 115(a) charges) in July, September, and October 2025 when he made the threats.

Similarly, events that have circulated in the public discourse *after* Murfin made his posts are irrelevant to Murfin's intent and motivations for making the posts—as Murfin could not have known about them when he made the posts. The same reasoning applies to how a reasonable person would have interpreted Murfin's posts at the time he made them—a person's perception could only have been informed by the context that existed at the time Murfin made the posts.

Evidence of Murfin's conduct and of events in the public discourse after October 2025 are further inadmissible under Rule 403. Their minimal probative value would be substantially outweighed by the risk of unfair prejudice. Any reference, for example, to Murfin's purported "good behavior" or "regrets" after October 2025 is irrelevant to whether he made true threats with the requisite intent months earlier. The same goes for events that occurred after October 2025 that have circulated in the public discourse, about which jurors may have strong opinions. Any introduction of or reference to such evidence would evoke improper emotional responses from the jury, resulting in potential jury nullification. And because this evidence would have no relevance or bearing on whether the legal elements are proven, referencing these matters would confuse the issues and waste time.

Murfin raises several arguments against the government's position here, yet they all prove the government's point. *See* Dkt. 39 at 5. He contends that "a plausible

defense strategy would include pointing to the lack of escalating behavior on the part of Mr. Murfin and the continued escalation of violence occurring between ICE agents and both undocumented immigrants and American citizens." *Id.* This argument not only shows why the Court needs to prohibit this evidence before trial (as Murfin apparently intends to reference this inadmissible evidence), it fails to explain how Murfin's "lack of escalating behavior," including "stepp[ing] away" from the "internet," is relevant to whether his statements months earlier constituted threats.[5] *Id.* As discussed in Section 4 above, whether Murfin escalated to actually carry out the threats is irrelevant. And his reference to "the continued escalation of violence between ICE agents and [others]" shows that Murfin intends to introduce this evidence to inflame the passions of the jury, despite that none of the evidence involves Murfin. Whatever "escalation of violence" Murfin is referring to here does not involve Murfin, the trial witnesses, or whether Murfin violated Sections 115(a)(1)(B) and 875(c).

Murfin also argues that the government "is wrong to try to limit the scope of reactions to Mr. Murfin's alleged threats to the reactions of law enforcement" because whether a statement is a true threat turns on whether a "reasonable reader" would think it a threat. Dkt. 39 at 4. He also argues that the response of law enforcement has minimal relevance. *Id.* Murfin's arguments miss the point. The response of law enforcement is particularly relevant because the *target* of Murfin's

[5] Murfin's arguments seem geared more towards mitigation factors at sentencing than admissibility of evidence at trial.

threats were *law enforcement*. *See, e.g.*, *Wheeler*, 776 F.3d at 746 (explaining that part of the true-threat analysis depends on "the recipients' responses" to the threats, and specifically relying on law enforcement's response to the threats where the threats urged the killing of "cops"); *United States v. Schneider*, 910 F.2d 1569, 1571 (7th Cir. 1990) ("The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it is a threat."). Murfin is wrong to suggest that law enforcement's response has minimal relevance.

Beyond that, the government agrees that whether Murfin's statement is a threat ultimately turns on whether a reasonable person would consider it a threat. But that doesn't undermine the government's position. At trial, the jury will have Murfin's exact post and language, as well as the post Murfin was responding to for context. The jury will also have their common sense and understanding of the English language. That will inform their decision whether Murfin's posts amount to threats. Murfin fails to explain how evidence of other people's posts and conduct—occurring after October 2025—is relevant or admissible, including reference to the highly inflammatory "escalation of violence occurring between ICE agents and both undocumented immigrants and American citizens" discussed above.

For these reasons, the Court should prohibit Murfin from referencing or introducing any conduct or statements by him or anyone else that occurred after October 2025—when he completed his final criminal act—other than law enforcement's direct response to Murfin's threats.

***7. Evidence and arguments related to other people's comments or social media statements are not admissible under Rules 402 and 403.***

The Court should prohibit Murfin from introducing or referencing social media posts other than Murfin's post and the original post he was responding to. Evidence of other individuals' posts or statements are inadmissible under Rules 402 and 403.

As to each of Murfin's charged posts, he posted in response to another X user's post. For example, in Counts 1 and 2 of the superseding indictment, another X user posted a video about "Filming ICE activities and arrests[.]" Murfin responded to that original post by stating, "Need too start shooting these [agents]":




Both Murfin's post and the original post about "Filming ICE activities" are admissible.

Other users also responded to the initial post (in the example above, the post concerning "filming ICE activities"). However, the Court should prohibit Murfin from introducing or referencing other users' posts in the threads. Whether other people responded to the post before or after Murfin is irrelevant to whether Murfin's posts could reasonably be construed as a threat. The jury is tasked with considering whether only Murfin's posts are threats. So the Court should prohibit evidence of other users' posts under Rule 402.

Even if other users' posts were relevant, the Court should still prohibit them under Rule 403. Any probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, and wasting time. Introducing evidence of other people's posts would inevitably cause the jury to compare Murfin's posts to others' posts. But whether Murfin's posts could reasonably be construed as a threat does not turn on whether his posts were more or less egregious than other users' posts.

Murfin all but confirms he intends to introduce such evidence. *See* Dkt. 39 at 6. He contends that an unspecified number—maybe thousands—of other users' posts need to be presented to the jury to show that Murfin's posts "were part of a broader collective response to the often brutal, sometimes illegal, tactics of ICE agents as they enforced immigration law[.]" *Id.* This argument misses the mark. Only Murfin is on trial in this case, and whether other users also made threats is not an issue for the jury. *See* Tenth Circuit Pattern Instruction No. 1.19 (instructing the jury that "[t]he fact that another person also may be guilty is no defense to a criminal charge"). Also

not an issue for the jury is how Murfin's comments compare to other people's comments. *See United States v. Turner*, 720 F.3d 411, 421 (2d Cir. 2013) ("And if [the defendant] were able to furnish examples of other threats as apparently serious as his attack on these judges, those threats would also exceed the ambit of the First Amendment's protections—not exonerate [the defendant]."). "Other people were doing it" is not a valid defense and is not relevant as a matter of law. Murfin's desire to introduce this evidence is simply an attempt to invite jury nullification.

For these reasons, the Court should issue a pretrial order prohibiting Murfin from introducing or referencing any post or statement other than his post and the post to which he was responding.

***8. Because a mens rea of recklessness is sufficient under 18 U.S.C. § 875(c), the government does not need to prove that Murfin specifically intended for federal agents to feel threatened.***

The mens rea the government must prove for the § 875(c) counts (*i.e.*, the even-numbered counts) is recklessness. *Counterman*, 600 U.S. at 69 ("[A] mental state of recklessness is sufficient. The [government] must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The [government] need not prove any more demanding form of subjective intent to threaten another."); *United States v. Sheikh*, 164 F.4th 629, 634 (7th Cir. 2026) ("[Section] 875(c) punishes threats that are made at least recklessly. … [And to the extent that prior precedent] suggested that a higher level of subjective criminal intent was required to violate § 875(c), *Counterman* supersedes that precedent: recklessness is now the standard." (and collecting other circuits' decisions

concluding the same)); *see also Terry v. Drummond*, No. 24-6046, 2025 WL 707451, at *9 (10th Cir. Mar. 3, 2025) ("In *Counterman*, the Supreme Court clarified the requisite intent for 'true threat' prosecutions is recklessness, which means the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." (internal quotation omitted)).

Murfin agrees that the requisite mens rea for the § 875(c) counts is recklessness. *See* Dkt. 26 at 7 (Murfin stating that his intent is not a factor "in whether he violated 18 U.S.C. § 875 (which requires a mens rea of recklessness, not specific intent)").

Thus, contrary to the Court's order sustaining Murfin's objection to the government's Rule 404(b) notice, it is not necessary under § 875(c) for the government to "show that Mr. Murfin intended the recipient of the threat to feel threatened." Dkt. 40 at 5. (The government is not contesting the Court's order on its 404(b) notice, but is only discussing this mens rea element here for the sake of clarity at trial). The Court in its 404(b) order relied on the Tenth Circuit's decision in *Heineman*, which was decided nine years before the Supreme Court's decision in *Counterman*. *Id.* (quoting *United States v. Stevens*, which quoted *United States v. Heineman*, 767 F.3d 970, 978 (10th Cir. 2014)). In *Heineman*, the Tenth Circuit concluded that in true-threat prosecutions, the First Amendment required that the defendant intended the recipient to feel threatened. 767 F.3d 970, 975 (10th Cir. 2014). *Counterman* rejected that assertion. As the parties here agree, to violate § 875(c), Murfin need only have been reckless, that is, he "consciously disregarded a

substantial risk that his communications would be viewed as" a threat. *Counterman*, 600 U.S. at 69.

***9. Character Evidence***

To the extent Murfin seeks to elicit any evidence related to his character, he must first establish the admissibility of such character evidence. *See United States v. Crockett*, 435 F.3d 1305, 1311 (10th Cir. 2006) (explaining that the proponent of the evidence has the burden to establish its admissibility, including by "explain[ing] what he expects the evidence to show and the grounds for which the party believes the evidence to be admissible" (internal quotation omitted)). And if he is able to do that, the Rules of Evidence limit how Murfin can introduce such character evidence.

Generally, a party may *not* introduce "[e]vidence of a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). At trial, Murfin may try to introduce evidence of his character under an exception in Rule 404(a)(2)(A), which states that "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." To establish the admissibility of such evidence, however, Murfin must first establish a "pertinent trait." As of this filing, Murfin has not explained or established any character trait that is pertinent to this case, so he cannot reference or elicit evidence about his character, including in his opening statement.

Indeed, there is no apparent character trait that is pertinent to this case. Perhaps Murfin may try to elicit evidence that he is peaceful, nonviolent, or law-abiding. Yet

none of these are "*pertinent* traits" under Rule 404(a)(2)(A). These supposed traits are not relevant to whether he made the specific statements or how a reasonable person would perceive the statements. Murfin may argue these traits are relevant to show he did not intend to, or lacked the ability to, carry out the threats. But as discussed in Section 4 above, Murfin's intent or ability to carry out the threats is not relevant. Thus, these supposed traits are not *pertinent* traits.

Even if Murfin could establish a pertinent trait, Rule 405 limits how he can introduce character evidence. *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992) ("[Rule] 405 establishes the permissible methods of proving character under Rule 404(a)(2)."). Murfin may only elicit character evidence through "testimony about [Murfin's] reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). That is, defense witnesses on direct examination must limit their testimony to evidence of Murfin's "reputation" or their "opinion" of Murfin. *See id.* They may not testify on direct examination about specific instances showing Murfin's character. *See id.* (limiting "inquiry into relevant specific instances of the person's conduct" to cross-examination). The Rule permits only the government to inquire on cross-examination about specific instances of Murfin's conduct that pertain to his character.[6]

[6] Rule 405(b) does not apply here because there is no character trait that is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b); s*ee United States v. Herder*, 59 F. App'x 257, 263 (10th Cir. 2003) (explaining that Rule 405(b) applies only where "the existence or nonexistence of the character trait itself determines the rights and liabilities of the parties").

Finally, if Murfin introduces evidence of a pertinent character trait, "the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). This includes introducing evidence of Murfin's uncharged posts on his X account. While the Court sustained Murfin's objection to the government introducing his uncharged posts under Rule 404(b) (Dkt. 40), the government may introduce that same evidence to rebut Murfin's character under Rule 404(a)(2)(A), should Murfin open the door to that inquiry.

***10. Murfin cannot reference or allude to the potential consequences or penalties of a conviction.***

At no point during the trial, including during his opening statement and closing argument, may Murfin reference or allude to the consequences or penalties he may face if convicted. *See United States v. Lin*, No. CR-23-192-G, 2024 WL 5048771, at *1 (W.D. Okla. Dec. 8, 2024) ("A jury is obligated to reach its verdict without regard to what sentence might be imposed. … [T]he jury shall not be informed of the possible penalties." (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) and *United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991)); Tenth Circuit Pattern Instruction No. 1.20 (instructing the jury that "[y]ou should not discuss or consider the possible punishment in any way while deciding your verdict"). If Murfin attempts to do so, the Court should strike the statement or testimony and issue a curative instruction to the jury.

*11. Electronic Evidence from X / Twitter*

The government's evidence will include electronic evidence provided by X. This electronic evidence includes the content and metadata of Murfin's charged posts. This evidence is admissible under the Federal Rules of Evidence.

First, the evidence is self-authenticating under Rule 902(11). *See* Fed. R. Evid. 902(11) (evidence is self-authenticating and does not require any extrinsic evidence if it is "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian"). X provided this electronic evidence along with a certificate of authenticity by the custodian of the records. This certificate was signed by the custodian under penalty of perjury, and certifies that the requirements outlined under Rule 803(6)(A)-(C) are satisfied, that is, the records "were prepared by X Corp. and are data that X Corp. servers record automatically at the time, or reasonably soon after, the data is transmitted by the user, and the data is kept in the course of regularly conducted business activity and was made by X Corp. as a regular practice."

Second, this evidence is not hearsay because the evidence consists of Murfin's own statements. *See* Fed. R. Evid. 801(d)(2)(A) (evidence is not hearsay if the "statement is offered against an opposing party and was made by the party in an individual or representative capacity"). And other information included in the electronic evidence from X that accompanies the post is not hearsay because it is machine-generated information that was not made by a "person" and thus cannot constitute hearsay. *See* Fed. R. Evid. 801(a)-(c); *United States v. Hamilton*, 413 F.3d

1138, 1142-43 (10th Cir. 2005) (computer-generated "header" information (including screen name, subject of posting, posting date, and individual's IP address) was not hearsay; no "person" acting as a declarant). Additionally, the certificate provided by the custodian of records meets the requirements of Rule 803(6) applying to records of regularly conducted business activity.

Thus, the government's anticipated electronic evidence is admissible under the authentication and hearsay rules.

***12. Limited Cross-Examination***

Under Rule 611(b), cross examination should not go beyond the subject matter of direct examination and matters affecting the witness's credibility. The Court has discretion to allow inquiry into additional matters as if on direct to be more efficient and avoid having witnesses testify twice. However, if the Court allows cross examination questioning to exceed the scope of direct, it should allow only non-leading questions. *See Estate of Smart vs. Chaffee*, Case No. 14-2111-JPO, 2020 WL 7643505 at *8 (D. Kan. Dec. 23, 2020).

## Conclusion

The government respectfully submits this trial brief in anticipation of the factual and legal issues that may arise at trial. The government requests that the Court grant it leave to submit additional briefing should subsequent issues arise.

Respectfully submitted,

CLINTON J. JOHNSON
United States Attorney

*/s/ Stephen N. Scaife*
Stephen N. Scaife, DC Bar #1656371
Christopher J. Nassar, OBA #31167
Assistant United States Attorneys
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

**Certificate of Service**

I hereby certify that on April 13, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to counsel for the defendant:

Jared Guemmer
Jason Lollman
Robert Ridenour
*Counsel for Defendant*

/s/ *Stephen N. Scaife*
Stephen N. Scaife
Assistant United States Attorney