**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LOGAN CHRISTOPHER MURFIN, a/k/a "Azulenq,"**<br><br>**Defendant.** | **Case No. 25-CR-463-GKF** |

**Government's Sentencing Memorandum**

Logan Murfin called for the violent and systemic murder of federal officials working for Immigration and Customs Enforcement. The United States recommends the Court sentence Murfin to 37 months of imprisonment and 3 years of supervised release. A sentence at the high-end of the Guidelines adequately accounts for Murfin's history and characteristics, the nature, circumstances, and seriousness of the offense, and the needs to deter criminal conduct, promote respect for the law, and protect the public.

## I. The Presentence Report and Applicable Guidelines Range

The United States has reviewed the Presentence Investigation Report ("PSR") and has no objections or corrections. Because Murfin issued multiple threats and he knew those public threats created a substantial risk of inciting others to also engage in that type of prohibited conduct, Murfin was properly assessed with specific offense

enhancements to his recommended Guideline range. PSR ¶¶ 20, 21. Additionally, because Murfin's threats were motivated by the victims' statuses as government employees, he also earned a victim-related enhancement to that Guideline range. PSR ¶ 22. Murfin has a total offense level of 19 and a criminal history category of I, resulting in an advisory Guidelines range of 30 to 37 months of imprisonment. PSR ¶ 44.

## II. Factual Summary

Murfin advocated for the death and execution of federal employees because he was angry with ICE's policies. In September and October 2025, Murfin made multiple public social media posts calling for ICE agents to be shot, gunned down, or executed from his "X" account, "Azulenq." Although Murfin's ire towards ICE may have been born out of political policy, his public advocacy for its federal employees to be "shot between the eyes" or "buried 6 feet under" were purposeful threats of violence intended to impede, intimidate, or interfere with ICE agents while performing their official duties or to retaliate against them simply for doing their jobs. *See* PSR ¶¶ 8, 11, 13.

An Indictment charging Murfin with five counts of threatening to assault and murder federal law enforcement officers with intent to impede, intimidate, interfere and retaliate, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), and five counts of interstate communication with a threat to injure, in violation of 18 U.S.C. § 875(c), alleging five separate threats, was filed on December 2, 2025. A

Superseding Indictment alleging five additional threats, resulting in five additional counts each of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4) and 18 U.S.C. § 875(c), was filed on April 6, 2026. Dkt. No. 31.

The matter proceeded to a jury trial before United States Court of International Trade Judge Jennifer Choe-Grovers on April 20, 2026 in the Northern District of Oklahoma. Dkt. No. 66. At trial, the United States introduced evidence of Murfin's threats, which included the electronic data associated with Murfin's social media account and screen shots of his threats. *See* Exh. 1 (Gov. Trial Exh. 4). The United States also introduced Murfin's statement to Homeland Security Investigations Special Agent Rebecca Gionta. Murfin admitted "Azulenq" was his social media account. He also admitted he posted statements regarding ICE agents out of anger. PSR ¶ 8.

A jury convicted Murfin of five counts of threatening to assault and murder federal law enforcement officers with intent to impede, intimidate, interfere and retaliate, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), and five counts of interstate communication with a threat to injure, in violation of 18 U.S.C. § 875(c) for issuing five separate threats, on April 24, 2026. Dkt. No. 66. Specifically, the jury convicted Murfin of the threats alleged in Counts 1 and 2:

> "Need too start shooting these 'just following orders' pigs. Ice agents are reenacting ww2 nazi germany and its not acceptable. Only good ice terrorist is buried 6 feet under";

Counts 3 and 4:

> "Every ICE agent needs shot between the eyes 'just following orders' isnt acceptable and they already exposed they are human garbage";

Counts 5 and 6:

> "Every Ice gestapo needs too be shot. 2nd amendment right too carry everyone should stay armed and when these terrorists come by just kill them. They dont deserve too live after 'just following orders' we aren't reliving ww2 germany. They dont want due process so show em";

Counts 7 and 8:

> "but we as US citizens should be gunning down these domestic terrorists. All ice gestapo can not use the 'just following orders' excuse. If you're complicit in this act you've gotta be executed for this act";

and Counts 15 and 16:

> "ice gestapo agents need to either be executed publicy. 'just following orders' is not a valid excuse in modern days".

Murfin was acquitted on Counts 9 – 14 and 17 – 20. Dkt. No. 66. Those counts alleged five additional threats, including, "Yeah ICE agents need to get shot in a 3,959 mile radius no where safe for gestapo pigs" as alleged in Counts 9 and 10, and four other posts calling for the federal agents to be "executed," as alleged in Counts 11 – 14 and 17 – 20.[1] Sentencing is scheduled for August 10, 2026. Dkt. No. 76.

## I. Argument

[1] Although acquitted conduct generally may not be considered in calculating the Guidelines range, *see* U.S.S.G. § 1B1.3(c), the Court may still consider it when determining the appropriate sentence, per 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4. The reasoning for Amendment 826, which added U.S.S.G. § 1B1.3(c), specifically clarified that nothing in the Guidelines Manual abrogated a court's authority under 18 U.S.C. § 3661. *See United Sates v. Tony*, 2025 WL 2256877, fn 5 (D. New Mexico 2025).

37 months of imprisonment and 3 years of supervised release satisfies the Guidelines and the Section 3553(a) factors.

### A. The nature and circumstances of the crimes and Murfin's history and characteristics justify a sentence at the high-end of the Guidelines.

The Court should look through the lens Murfin provided when assessing the nature and circumstances of his crimes. Murfin held himself out to be a proponent of hate and violence towards federal employees because he disagreed with their agency's policy. Murfin's anger towards ICE caused him to liken its employees to "gestapo pigs," Nazis, and "human garbage." Murfin advocated murder as a justified response to his anger. His threats were borne out of that mindset, and this Court should consider as much when determining the nature and circumstances of Murfin's crimes and his characteristics.

Murfin's threats were especially dangerous because he prefaced them by dehumanizing his targets, making his calls for their execution more palatable to his audience. By comparing ICE agents to Nazis acting under German rule who "just follow orders" and labeling them "domestic terrorists," he minimized the value of the agents' lives to his audience, thereby rationalizing their murder. Murfin justified executing ICE agents by purposefully demonizing them to his audience. This normalized violence against federal officers and increased the risk that someone in Murfin's audience would carry out his call for their execution.

Murfin's threats were also persistent and absolute. Murfin drew no distinction

between any particular agent or act. His decree that the only "good" ICE agent was "buried 6 feet under" endangered all ICE agents. This was a blanket attempt to instill fear in every single ICE agent that they might be executed by a radicalistic like Murfin simply because that agent went to work.

A sentence of 37 months of imprisonment, coupled with a 3-year term of supervised release, accounts for Murfin's history and characteristics and the circumstances of his crime. The sentence imposed should reflect the magnitude of fear Murfin intended to inflict upon every federal agent who worked for ICE. Murfin's rhetoric to dehumanize his targets, normalize their executions, and terrorize federal officers reveals the distressing nature and circumstance of his crimes.

**B. A sentence at the high-end of the Guidelines is a just punishment that reflects the seriousness of the offense, promotes respect for the law, deters criminal conduct and protects the public.**

A sentence at the high-end of the Guidelines would provide a just sentence, account for the seriousness of those threats, promote respect for the law, and protect the public. Such a sentence would also be presumptively reasonable. *Rita v. United States*, 551 U.S. 338 (2007); *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).

Murfin's threats to have ICE agents executed were unambiguous and highly visible. He used the world wide web as a platform to reach a large audience. He purposefully issued his threats in response to social media postings regarding ICE to reach a specific audience. Murfin even posted threats in response to official postings

by the United States Department of Homeland Security, *see* Exh. 1, p. 7, ensuring that the federal agents he was targeting would be alerted to, and feel the danger of, his threats. That brazen act of engaging directly with a federal agency to voice a desire to execute its agents displays utter disrespect for the law. A sentence at the high end of the Guidelines is needed to promote respect for the law, especially given Murfin's highly public threats that were visible to all who were viewing DHS's social media activity.

More importantly, not only did Murfin publicly commit his crimes before a large audience, but he specifically sought out one that may be sympathetic to his cause and act on those directives. Murfin posted many of his threats in response to other internet users who were also critical of ICE. By purposefully posting his threats to that audience, Murfin was aware that there was a substantial risk of inciting others not only to carry out his calls to shoot ICE agents "between the eyes," but also to incite others to engage in similar threats. PSR ¶ 21. Those within Murfin's sympathetic audience who saw his publicly posted threats are likely to engage in similar conduct, unless they are deterred. A sentence of minimal incarceration would not be an effective deterrent to Murfin or to those who watched him commit his purposefully public crimes. A sentence of 37 months, however, would be an effective deterrent to Murfin. It would also provide those in his like-minded audience with a strong deterrent against committing similar acts, knowing that they may also suffer appropriate and just consequences for engaging in that type of behavior.

This Court must also consider general deterrence when fashioning its sentence. *See United States v. Crosby*, 119 F.4th 1239, 1249-51 (10th Cir. 2024). Strong deterrence against this type of crime is needed now more than ever. Special Agent Brad Dillahunty and Special Agent Rebecca Gionta each testified at trial about the increased threats ICE has faced and how seriously the agency must take each one. SA Dillahunty testified that nearly thirty law enforcement officers were involved in the investigation of Mr. Murfin's crimes and the precautions they underwent because they were unaware of the dangers that might await them while executing search warrants or attempting to arrest Mr. Murfin. SA Gionta testified the violence ICE faced, including a sniper opening fire on an ICE facility in Dallas, Texas during the same September that Murfin was making his threats to shoot ICE agents.

The fear that SA Dillahunty and SA Gionta expressed was well-founded. ICE has suffered a barrage of threats like Murfin's before, during and even after his calls for violence against its agents. *See, generally, United States v. Taylor Ryan Prigmore*, Case No. 26-CR-076-G (WDOK 2026),[2] *United States v. Daniel Barber*, Case No. 26-CR-00164-HSG (NDCA 2026),[3] *United States v. Robert Wilson King*, Case No. 25-CR-189-

---

[2] A Grand Jury in the Western District of Oklahoma indicted Mr. Prigmore for threatening to murder federal law enforcement officers for threats made against ICE over social media. A copy of the Indictment in that matter is attached as Exh. 3.

[3]A Grand Jury in the Northern District of California indicted Mr. Barber for interstate communications with a threat to injure, including for a statement labeling ICE agents as "gestapo Nazi" and that all of them should be "executed." A copy of the Indictment in that matter is attached as Exh. 4.

E (NDTX 2025).[4] As these threats have become more common, DHS issued a statement condemning the escalating violence against its federal law enforcement officers, who have faced a 1000% increase in assaults against them, during the time period Murfin was issuing his threats. See Exh. 6 (DHS Statement from October 9, 2025). A few months later, ICE continued to suffer a 1,300% increase in assault and 8,000% increase in death threats. See Exh. 7 (DHS Statement from January 8, 2026). As violent acts continue to put United States officials at risk, these kinds of threats must be taken seriously. A sentence at the high-end of the Guidelines is needed to generally deter others from continuing this growing pattern of violent threats against federal officials.

## II. Conclusion

A sentence of 37 months of imprisonment, coupled with a 3-year term of supervised release, satisfies the Guidelines and § 3553(a) factors. That sentence emphasizes the seriousness of the offense, promotes respect for the law, protects the public, and deters others from committing similar crimes. It also accounts for the nature and circumstance of the offense and for Murfin's history and characteristics.

[4] A Grand Jury in the Northern District of Texas indicted Mr. King for threats made to ICE agents over social media. King pled guilty to Count Two of the Indictment and is scheduled to be sentenced on October 21, 2026. A copy of that Indictment is attached as Exh. 5.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY

*/s/ Christopher J. Nassar*
Christopher J. Nassar, OBA No. 31167
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

**Certificate of Service**

I hereby certify that on the 27th day of July, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Jason Daniel Lollman
*Counsel for Defendant*

*/s/ Christopher J. Nassar*
Christopher J. Nassar
Assistant United States Attorney